**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **FLIGHT SOLUTIONS, INC.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:09-cv-1155** |
| | ) | **Judge Trauger** |
| **CLUB AIR, INC. and** | ) | |
| **DALTON L. LOTT,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM**

Pending before the court is the Motion for Transfer of Venue[1] filed by defendant Club

Air, Inc. (Docket No. 14) and the plaintiff's response (Docket No. 17).  For the reasons

discussed below, the defendant's motion will be granted.

**BACKGROUND**

In September 2008, defendant Club Air, Inc. ("Club Air"), which is based in Dallas,

Texas, contracted to purchase an airplane from plaintiff Flight Solutions, Inc. ("Flight

Solutions"), which is based in Gallatin, Tennessee.[2]  The deal ultimately fell through, leading to

the current dispute.

---

[1] The same document contains a Motion to Dismiss the claim against defendant Dalton
Lott, on the grounds that the court has no personal jurisdiction over him.  The plaintiff has
conceded this point (Docket No. 17 at 4), and on December 28, 2009, it voluntarily dismissed
Lott from the case.  (Docket No. 19.)  Thus, the court will deny the Motion to Dismiss as moot.
The term "defendant" in this memorandum will refer solely to Club Air, Inc.

[2] Unless otherwise noted, factual allegations are taken from the Complaint (Docket No.1,
Ex. 1), the parties' filings, and related affidavits and declarations.

1

Earlier that year, Brent Reubin, Club Air's chief pilot, saw an online advertisement for the plaintiff's 1984 Cessna Citation III aircraft.  He emailed Kevin McCutcheon, the president of Flight Solutions, about the plane, which was based at Airlake Airport in Lakeville, Minnesota. In August 2008, Reubin and Eric Phillips, Club Air's director of maintenance, traveled to Minnesota to inspect the plane and meet with McCutcheon.

The defendant agreed to buy the aircraft for approximately $3.5 million.  On September 5, 2008, Flight Solutions and Club Air executed an Aircraft Sale and Purchase Agreement (the "Purchase Agreement").  McCutcheon signed on behalf of Flight Solutions, and Gregory Jordan, an officer and director of Club Air, signed on behalf of the defendant.  The agreement provided:

> During the thirty (30) day period immediately following the date of this Agreement (the "Inspection Period"), Buyer shall have the right to inspect and test the Aircraft . . . .  If as a result of such inspection and examination Buyer determines that the Aircraft is not in airworthy condition (including compliance with all applicable airworthiness directives), . . . Buyer shall have the right to terminate its obligations under this Agreement by notice to Seller given not later than the expiration of the Inspection Period . . . .

(Docket No. 14 at 9.)

In September 2008, the aircraft was flown to Dallas Love Field Airport for the pre-purchase inspection, which was conducted by Vitesse Aviation Services ("Vitesse").  Vitesse found that the plane was not airworthy and that it required considerable repairs.  Four of Vitesse's Dallas-based employees worked on the plane: director of maintenance Stacy Lay; chief inspector Nelson Bivens; quality control inspector Trevor Frase; and crew chief Bill Schwagart. McCutcheon met with Phillips and Reubin in Dallas to discuss the necessary repairs.  Vitesse

began the repairs in October 2008, charging the plaintiff more than $248,000 for the work.  As

the one-month contractual inspection period drew to a close, Phillips discussed with

McCutcheon the fact that the repairs were taking longer than anticipated.

By December 2008, the market value of the aircraft had dropped, and Club Air found it

difficult to obtain financing sufficient to pay the previously agreed price.  Club Air president

Dalton Lott exchanged emails with McCutcheon, and by December 9, 2008, it was clear to both

parties that the transaction would not go forward.

The Purchase Agreement contains a choice-of-law and forum-selection clause:

> Governing Law, Jurisdiction and Venue.  This Agreement shall be
> construed in accordance with and governed by the law of the State
> of Tennessee.  In the event legal proceedings to enforce this
> Agreement shall become necessary, it is understood and agreed
> that the courts of Tennessee shall have jurisdiction and that venue
> shall be proper in Sumner County, Tennessee.

(*Id.* at 14.)  On November 2, 2009, Flight Solutions filed suit in the Circuit Court for Sumner

County, Tennessee, asserting claims for breach of contract against Club Air and tortious

interference with contract against Lott.  On December 8, 2009, the defendants removed the case

to this court on diversity grounds, pursuant to 28 U.S.C. §§ 1332 and 1446.  The plaintiff has

since voluntarily dismissed Lott from the case.

## ANALYSIS

The defendant has filed a Motion for Transfer of Venue pursuant to 28 U.S.C. § 1404(a),

arguing that venue is more appropriate in the Northern District of Texas.

## I.    Motion to Transfer Standard

Section 1404(a) provides that a district court may, "[f]or the convenience of parties and

witnesses, in the interest of justice, . . . transfer any civil action to any other district or division where it might have been brought."[3]  In deciding whether to grant a motion to transfer, a district court must consider a number of "case-specific factors," namely, "the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'"  *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1136-37 (6th Cir. 1991).  District courts have "broad discretion" in making this determination.  *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009).  "The moving party bears the burden of establishing that the factors weigh strongly in favor of transferring venue."  *Clayton v. Heartland Res., Inc.*, No. 3:08-cv-0513, 2008 U.S. Dist. LEXIS 49839, at *11 (M.D. Tenn. June 30, 2008).

## II.  Effect of the Forum-Selection Clause

The forum-selection clause in the Purchase Agreement is relevant to, but not dispositive of, the court's decision on whether to transfer pursuant to § 1404(a).[4]  A valid forum-selection clause "'should receive neither dispositive consideration . . . nor no consideration . . . but rather the consideration for which Congress provided in § 1404(a).'"  *Moses*, 929 F.2d at 1136 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)).  More specifically, *Moses* and *Stewart* both state that a forum-selection clause is "'a significant factor that [should figure]

---

[3] The plaintiff does not dispute the fact that it could have brought this suit in the Northern District of Texas.

[4] In its response brief, the plaintiff completely fails to address the relevant factors under § 1404(a).  Instead, it argues (1) that the forum-selection clause is valid and enforceable (Docket No. 17 at 2-3), and (2) that the court has personal jurisdiction over Club Air.  (*Id.* at 3-4.)  But these contentions are irrelevant; the defendant acknowledges that the clause is valid, and it does not argue that the court lacks personal jurisdiction over it.

centrally in the District Court's calculus." *Id.* (quoting *Stewart*, 487 U.S. at 29) (alteration in original).

But both of those cases involved mandatory forum-selection clauses, which contain language requiring that the parties bring suit in a specified forum. *See id.* at 1133 (applying clause stating that "all litigation must be commenced in [the specified forum]"); *Stewart*, 487 U.S. at 24 n.1 (applying clause stating that the specified forum "shall have exclusive jurisdiction" over any suit). A permissive forum-selection clause, in contrast, "authorize[s] jurisdiction in a designated forum, but do[es] not prohibit litigation elsewhere. If a forum selection clause is permissive, the parties are not bound to bring suit in the designated forum." *SiteWorks Solutions, LLC v. Oracle Corp.*, No. 08-2130, 2008 U.S. Dist. LEXIS 72116, at *7 (W.D. Tenn. Sept. 22, 2008) (citation and quotation marks omitted) (alterations in original); *see also Hitachi Med. Sys. Am. v. Bay Harbor MRI, Inc.*, 2009 U.S. Dist. LEXIS 65881, at *7-8 (N.D. Ohio July 28, 2009) (noting that a forum-selection clause that "does not mandate a singular forum" is permissive as a matter of law and collecting relevant cases).

District courts in the Sixth Circuit generally assign permissive forum-selection clauses little weight in deciding whether to transfer venue. *See, e.g.*, *Atlas Oil Co. v. Micro-Design, Inc.*, No. 2:08-cv-12467, 2009 U.S. Dist. LEXIS 12134, at *6-7 (E.D. Mich. Feb. 17, 2009) ("[C]ourts consider a permissive forum selection clause to be a relatively minor factor in the transfer analysis."); *JFE Steel Corp. v. ICI Americas, Inc.*, No. 1:06-CV-2386, 2008 U.S. Dist. LEXIS 76381, at *9 (N.D. Ohio Sept. 30, 2008) ("Ultimately, the permissive forum-selection clause . . . does not weigh heavily in the court's decision."); *Braman v. Quizno's Franchise Co., LLC*, No.

5:07CV2001, 2008 U.S. Dist. LEXIS 97929, at *17 (N.D. Ohio Feb. 20, 2008) (noting that while a mandatory clause would favor transfer to the specified forum, a permissive clause would not); *First Solar, LLC v. Rohwedder, Inc.*, No. 3:04CV7518, 2004 U.S. Dist. LEXIS 24600, at *4 (N.D. Ohio Dec. 8, 2004) (same); *Black v. Open Solutions, Inc.*, No. 3:05-0469, 2005 WL 1882386, at *4 (M.D. Tenn. Aug. 9, 2005) (declining to transfer the case to the forum specified in a permissive clause).  Indeed, a sophisticated commercial party that fails to bargain for a mandatory forum-selection clause "should expect that the use of permissive forum selection clauses may result in distant litigation."  *JP Morgan Chase Bank, N.A. v. Coleman-Toll Ltd. P'ship*, No. 08 Civ. 10571, 2009 U.S. Dist. LEXIS 45418, at *18 (S.D.N.Y. May 26, 2009) (citation omitted).

Here, the forum-selection clause in the Purchase Agreement merely states that Tennessee courts "shall have jurisdiction" over any lawsuit to enforce the contract and that "venue shall be proper in Sumner County, Tennessee."  The clause does not require the parties to bring suit in Tennessee, and it does not state that Tennessee courts shall have *exclusive* jurisdiction or be the *exclusive* venue for any such suit.  Multiple courts can have jurisdiction over a single dispute, of course, and venue can simultaneously be proper in multiple districts.  Because the plain terms of the forum-selection clause do not prohibit litigation outside of Tennessee, the court finds that the clause is permissive.  Accordingly, even though the forum-selection clause supports keeping this case in Tennessee, the court will not give it much weight in the § 1404(a) analysis.

## III.    Other Relevant Factors

The court's decision on whether to transfer will instead turn on the usual private and

public interest factors that are relevant to a § 1404(a) analysis.  These include: (1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) the location of sources of proof, especially non-party witnesses; (4) the location of the events giving rise to the dispute; (5) the advantage of having the dispute adjudicated by a local court; (6) systemic integrity and fairness; and (7) any other factors relating to the interests of justice.  *Clayton*, 2008 U.S. Dist. LEXIS 49839 at *17; *Sony/ATV Music Publ'g LLC v. CAVS USA, Inc.*, 2009 U.S. Dist. LEXIS 62512, at *25 (M.D. Tenn. July 21, 2009); *Reese*, 574 F.3d at 320; *Smith v. Kyphon, Inc.*, 578 F. Supp. 2d 954, 962 (M.D. Tenn. 2008).

The court must give significant weight to the plaintiff's choice of forum, particularly when the plaintiff resides in the forum.  *Kyphon*, 578 F. Supp. 2d at 962; *see also Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 413 (6th Cir. 1998) (noting that this factor is not dispositive).  Flight Solutions is located in the Middle District of Tennessee, so this factor weighs against transfer.

The court must also consider the convenience of the parties.  Here, one party will be inconvenienced regardless of the forum, because the plaintiff is based in Tennessee and the defendant is based in Texas.  The court "should not transfer a case where the transfer would simply exchange the inconvenience of one party for that of the other." *SiteWorks*, 2008 U.S. Dist. LEXIS 72116 at *11 (citation omitted).  Nothing suggests that either party is unable to bear the financial burden of litigating outside of its home state, so this factor is neutral.

The defendant correctly points out that the overwhelming majority of potential witnesses are located in Texas.  One of the most important factors in deciding whether to transfer is the location of non-party witnesses.  *Sony/ATV*, 2009 U.S. Dist. LEXIS 62512 at *25; *Kyphon, Inc.*,

7

578 F. Supp. 2d at 963; *In re Aredia & Zometa Prods. Liab. Litig.*, 2008 U.S. Dist. LEXIS 17906, at *11 (M.D. Tenn. Mar. 6, 2008); *Steelcase Inc. v. Smart Techs.*, 336 F. Supp. 2d 714, 721 (W.D. Mich. 2004).  The defendant has identified four non-party witnesses – Lay, Bivens, Frase, and Schwagart – who worked for Vitesse and played a role in the inspection that found the plane to be unairworthy.[5]  The defendant characterizes these witnesses as "crucial" to its litigation strategy, because it plans to raise the plane's airworthiness as a defense.  (Docket No. 15 at 10.)  Each of the witnesses is currently employed in Dallas and is subject to the subpoena power of the district court in the Northern District of Texas' Dallas Division.  In contrast, this court would lack the power to subpoena the witnesses for trial if they refuse to testify.[6]  Even if they agree to testify in Tennessee, the necessary flight and hotel accommodations would be financially burdensome for the defendant and inconvenient for the witnesses.  The plaintiff, meanwhile, does not contest the defendant's assertion that Flight Solutions is unlikely to call any Tennessee-based non-party witnesses (Docket No. 15 at 9), so a trial in Texas would not create similar problems.

---

[5] In lieu of affidavits, the defendant has submitted unsworn declarations from its employees containing information about the non-party witnesses.  The plaintiff argues that these unsworn declarations are "unacceptable under Tennessee jurisprudence."  (Docket No. 17 at 4.)  But the court may consider such declarations as evidence if they are dated and subscribed as true under penalty of perjury.  28 U.S.C. § 1746.  The defendant's declarations meet these requirements.  "Courts are generally consistent in validating documents that were sworn to under penalty of perjury, notwithstanding the fact that they were not notarized."  *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 475 (6th Cir. 2002).

[6] In that event, the defendant could present videotaped deposition testimony.  Fed. R. Civ. P. 32(a)(4)(B).  But "the method of presenting videotaped depositions is not the equivalent of live testimony by these witnesses. . . .  Trial by videotape is simply not preferable to live examination in front of a jury."  *In re Aredia & Zometa*, 2008 U.S. Dist. LEXIS 17906 at *13.

Club Air has also identified at least four of its employees – Lott, Reubin, Phillips, and Jordan – who will be essential witnesses at trial.  All of these witnesses reside near Dallas.  On the other hand, the defendant claims that McCutcheon "appears to be the single individual acting throughout this transaction on behalf of Plaintiff" (Docket No. 15 at 9), and the plaintiff does not identify any other Tennessee-based party witnesses.  The convenience of party witnesses is less important than that of non-party witnesses, "because it is generally presumed that party witnesses will appear voluntarily in either jurisdiction, but non-party witnesses, with no vested stake in the litigation, may not."  *Azarm v. $1.00 Stores Servs.*, No. 3:08-1220, 2009 U.S. Dist. LEXIS 47179, at *13 (M.D. Tenn. June 5, 2009).  Nevertheless, the court finds it relevant that the defendant has identified multiple party witnesses, while the plaintiff has identified, at most, one.  Besides McCutcheon, every identified witness – both party and non-party – is located in Texas.  This weighs heavily in favor of transfer.[7]

In addition, the events giving rise to this dispute largely occurred in Texas, not Tennessee.  None of Club Air's employees traveled to Tennessee in connection with the deal, but McCutcheon traveled to Dallas for meetings.  Most importantly, the inspection of the plane and Vitesse's subsequent repairs took place in Dallas.  This factor also favors transfer.

None of the other factors weighs substantially in the court's decision.  First, the states of Tennessee and Texas have an equal interest in adjudicating their citizens' contract disputes, and

---

[7] The defendant also points out that Club Air's and Vitesse's relevant documents are located in Dallas.  In light of current technology, which allows documents to be scanned and produced electronically, this does not factor heavily into the court's decision.  *Sony/ATV*, 2009 U.S. Dist. LEXIS 62512 at *28.

9

a transfer would not offend the public policies of either state.  Second, the congestion of the Northern District of Texas' docket is not significantly different from that of the Middle District of Tennessee.  (Docket No. 14 at 30.)  Finally, although the Purchase Agreement is to be construed according to Tennessee law, nothing suggests that a federal judge in Texas will be unable to research and apply the relevant law to this straightforward contract dispute.

On balance, the court finds that it should transfer this case.  The plaintiff's choice of forum and the permissive forum-selection clause are outweighed by the fact that (1) other than McCutcheon, every identified witness, including every non-party witness, is located in Texas and (2) the relevant events largely took place in Texas, not Tennessee.  Accordingly, the court will transfer this case to the Dallas Division of the District Court for the Northern District of Texas.

## CONCLUSION

For all the reasons discussed above, the court will grant the defendant's Motion for Transfer of Venue.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

10